TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and
potential Rule 23 Class*

**Case No. 18-cv-12220**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
LIJUN GENG,
HAIJUN CAO,
QIFANG CHEN,
XIANGUI LIANG,
ZHOU LIAO,
HONGYING TANG,
*on their own behalf and on behalf of others similarly
situated*

*Plaintiffs*,

v.

SHU HAN JU RESTAURANT II CORP
    d/b/a Hui Fu Chinese Cuisine;
    d/b/a Shu Han Ju;
    d/b/a Jin Kitchen and Bar
SHU HAN JU RESTAURANT, LLC
    d/b/a Shu Han Ju;
JOHN HWANG
TAI HUNG CHIU
    a/k/a DANIEL CHIU
SHICHANG XIE
    a/k/a KENNY XIE, and
ALICE LI
    a/k/a ALICE LEE;
    a/k/a ALICE DOE;
    a/k/a JANE LI;
    a/k/a JANE LEE;
    a/k/a JANE DOE.

*Defendants*.

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

<u>**FIRST AMENDED**</u>
<u>**COMPLAINT**</u>

------------------------------------------------------------- x

Plaintiffs LIJUN GENG, HAIJUN CAO, QIFANG CHEN, XIANGUI LIANG, ZHOU

LIAO, AND HONGYING TANG (hereinafter referred to as Plaintiffs), on behalf of themselves

and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this

Amended Complaint against Defendants SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu

Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar; and SHU HAN JU

RESTAURANT, LLC d/b/a Shu Han Ju; TAI HUNG CHIU a/k/a DANIEL CHIU, JOHN

HWANG, SHICHANG XIE a/k/a KENNY XIE, ALICE LI a/k/a ALICE LEE a/k/a ALICE

DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE, and alleges as follows:

## <u>INTRODUCTION</u>

1.      This action is brought by the Plaintiffs LIJUN GENG, HAIJUN CAO,

QIFANG CHEN, XIANGUI LIANG, ZHOU LIAO, AND HONGYING TANG on behalf of

themselves as well as other employees similarly situated, against the Defendants for alleged

violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York

Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment

policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully and intentionally

committed widespread violations of the FLSA and NYLL by engaging in pattern and practice

of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and

overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from

the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and

post-judgement interest; and or (4) attorney's fees and cost.

4.      Plaintiffs further alleges pursuant to NYLL § 650 et seq. and 12 New York

Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the

Defendants: (1) unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up

to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      From on or about October 10, 2018 to November 12, 2018, Plaintiff LIJUN GENG was employed by Defendants to work as a cook at 58 Third Avenue, New York, NY 10003.

8.      From on or about December 01, 2016 to December 31, 2017, Plaintiff

HAIJUN CAO was employed by Defendants to work as a deliveryman at 465 6th Avenue, New York, NY 10011.

9.      From on or about August 01, 2018 to May 27, 2019, Plaintiff QIFANG CHEN was employed by Defendants to work as a waitress and cashier at 58 Third Avenue, New York, NY 10003.

10.     From on or about March 07, 2019 to May 27, 2019, Plaintiff XIANGUI LIANG was employed by Defendants to work as a waiter at 58 Third Avenue, New York, NY 10003.

11.     From on or about March 03, 2019 to May 27, 2019, Plaintiff ZHOU LIAO was employed by Defendants to work as a deliveryman at 58 Third Avenue, New York, NY 10003.

12.     From on or about April 26, 2019 to May 27, 2019, Plaintiff HONGYING TANG was employed by Defendants to work as a waitress and cashier at 58 Third Avenue, New York, NY 10003.


## **DEFENDANTS**

### *Corporate Defendants*

13.     Defendant SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar is a domestic business corporation organized under the laws of the State of New York with a principal address at 58 Third Avenue, New York, NY 10003.

14.     SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar is a business engaged in interstate commerce that has

gross sales in excess of five hundred thousand dollars ($500,000) per year.

15. SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar purchased and handled goods moved in interstate commerce.

16. Defendant SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju is a domestic business corporation organized under the laws of the State of New York with a principal address at 465 6th Avenue, New York, NY 10011.

17. SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

18. SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju purchased and handled goods moved in interstate commerce.

### Owner/Operator Defendants

19. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

20. TAI HUNG CHIU a/k/a DANIEL CHIU, is the President and New York Alcoholic Beverage Control principal for SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records at SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju.

21.     TAI HUNG CHIU a/k/a DANIEL CHIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju.

22.     Upon information and belief, the restaurant operating under SHU HAN JU RESTAURANT II CORP located at 58 Third Avenue, New York, NY 10003 permanently closed its business on or about May 27, 2019.

23.     Upon information and belief, TAI HUNG CHIU a/k/a DANIEL CHIU personally moved all the equipment, inventories, raw materials, and other restaurant supplies out of the restaurant operating under SHU HAN JU RESTAURANT II CORP located at 58 Third Avenue, New York, NY 10003.

24.     Upon information and belief, TAI HUNG CHIU a/k/a DANIEL CHIU moved the equipment, inventories, raw materials, and other restaurant supplies of SHU HAN JU RESTAURANT II CORP to the restaurant operating under SHU HAN JU RESTAURANT, LLC, located at 465 6th Avenue, New York, NY 10011.

25.     TAI HUNG CHIU a/k/a DANIEL CHIU hired Plaintiff Qifang Chen as a waitress to work at the restaurant located at 58 Third Avenue, New York, NY 10003.

26.     JOHN HWANG and New York Alcoholic Beverage Control principal for SHU

HAN JU RESTAURANT, LLC d/b/a Shu Han Ju, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju.

27.     JOHN HWANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju.

28.     SHICHANG XIE a/k/a KENNY XIE and majority shareholder for SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar.

29.     SHICHANG XIE a/k/a KENNY XIE acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar.

30.     Upon information and belief, on or about December 2018, TAI HUNG CHIU a/k/a DANIEL CHIU sold part or all of his shares in SHU HAN JU RESTAURANT II CORP to SHICHANG XIE a/k/a KENNY XIE.

31.     On or about January 2019, SHU HAN JU RESTAURANT II CORP changed its doing business as name to Jin Kitchen and Bar.

32.     SHICHANG XIE a/k/a KENNY XIE hired Plaintiffs Zhou Liao, Xiangui Liang, and Hongying Tang.

33.     SHICHANG XIE a/k/a KENNY XIE told Plaintiffs Zhou Liao, Xiangui Liang, and Hongying Tang their rate of pay.

34.     SHICHANG XIE a/k/a KENNY XIE determined Plaintiffs Zhou Liao, Xiangui Liang, and Hongying Tang's work schedule.

35.     ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar.

36.     ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar and d/b/a Jin Kitchen and Bar.

37.     Upon information and belief, ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE is the mother of SHICHANG XIE a/k/a KENNY XIE.

38.     Upon information and belief, ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE often goes into the kitchen and direct kitchen staffs on how to perform their duties.

39.     Upon information and belief, on or about April 24, 2019, ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE fired most if not all of the kitchen workers at SHU HAN JU RESTAURANT II CORP.

40.     Upon information and belief, on or about April 25, 2019, ALICE LI a/k/a ALICE LEE a/k/a ALICE DOE a/k/a JANE LI a/k/a JANE LEE a/k/a JANE DOE hired a new group of kitchen workers for SHU HAN JU RESTAURANT II CORP.

## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

41. Upon information and belief, Corporate Defendants SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar; and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju are joint employers of Plaintiff and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they share staff, including Plaintiff, pay Plaintiff as the shareholders of the enterprise, advertise the Corporate Defendants as an enterprise (as a chain of Sichuan Chinese food doing business as "Shu Han Ju"), and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners, including New York

Alcoholic Beverage Control principal TAI HUNG CHIU.

42. At all times relevant herein, SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar; and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

43. Upon information and belief, SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar changed its business name from "Shu Han Ju" to "Hui Fu Chinese Cuisine" on or about April or May of 2018.

44. However, despite the doing business name change, SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine maintained its liquor license, food license permit and corporate entity registered with the DOS.

45. Up to today, SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar's "Hui Fu Chinese Cuisine" website at www.huifuchineseny.com continues to link to "Shu Han Ju II's" Yelp and FaceBook page (See Exhibit 08).

46. At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar; and SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju.

47. The restaurant operating under SHU HAN JU RESTAURANT II CORP, located at 58 Third Avenue, New York, NY 10003, and restaurant operating under SHU HAN JU RESTAURANT, LLC, located at 465 6th Avenue, New York, NY 10011 share

common ownership.

48. Upon information and belief, TAI HUNG CHIU a/k/a DANIEL CHIU is the majority shareholder of both SHU HAN JU RESTAURANT, LLC and SHU HAN JU RESTAURANT II CORP.

49. Upon information and belief, SHU HAN JU RESTAURANT, LLC and SHU HAN JU RESTAURANT II CORP share restaurant supplies, and other materials necessary to maintain the operation of the restaurants.

### Wage and Hour Claims

50. There were at least twenty (20) employees at SHU HAN JU RESTAURANT II CORP d/b/a Hui Fu Chinese Cuisine and d/b/a Shu Han Ju and d/b/a Jin Kitchen and Bar including seven (7) to eight (8) kitchen staff, two (2) waiters and at least seven (7) to eight (8) deliverymen.

51. There are at least ten (10) employees at SHU HAN JU RESTAURANT, LLC d/b/a Shu Han Ju, including four (4) to five (5) kitchen staff, two (2) to three (3) wait staff, and two (2) to three (3) deliverymen.

52. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the putative Class.

53. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful minimum wage and overtime compensation at one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

54. While employed by Defendants, Plaintiffs were not exempt under federal or state laws requiring employers to pay employees minimum wage and overtime.

55. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

56. Upon information and belief, Defendants failed to keep full and accurate records in

order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

57. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

58. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

59. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### Plaintiff LIJUN GENG

60. From on or about October 10, 2018 to November 12, 2018, Plaintiff LIJUN GENG was employed by Defendants to work as a cook at 58 Third Avenue, New York, NY 10003.

61. Plaintiff LIJUN GENG was hired by Manager SI HAN CHEN.

62. Plaintiff LIJUN GENG was fired by Manager SI HAN CHEN.

63. From on or about October 10, 2018 to November 12, 2018, Plaintiff LIJUN GENG's regular work schedule ran from 11:30 to 15:00 and again from 16:00 to 22:00 for nine and a half (9.5) hours a day on Sundays, Mondays, Tuesdays, Wednesdays and

Thursdays for five (5) days and forty seven and a half (47.5) hours a week; and from 11:30 to 15:00 and again from 16:00 to 23:00 for ten and a half (10.5) hours on Saturdays for a total of 58.00 hours each week.

64. At all relevant times, Plaintiff LIJUN GENG did not have a fixed time for lunch or for dinner.

65. In fact, Plaintiff LIJUN GENG had ten (10) minutes to eat and even then he was on call, meaning that if customer's order came, his break stopped and he had to make appetizer for restaurant customers.

66. From on or about October 10, 2018 to November 12, 2018, Plaintiff LIJUN GENG was paid a flat compensation at a rate of three thousand two hundred dollars ($3200.00) per month.

67. Plaintiff LIJUN GENG was paid biweekly, in cash and in check.

68. At all relevant times, Plaintiff LIJUN GENG was not paid overtime pay for his overtime work.

69. Throughout his employment, Plaintiff LIJUN GENG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

70. Throughout his employment, Plaintiff LIJUN GENG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

71. Throughout his employment, Plaintiff LIJUN GENG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

**Plaintiff HAIJUN CAO**

72. From on or about December 01, 2016 to December 31, 2017, Plaintiff HAIJUN CAO was employed by Defendants to work as a deliveryman at 465 6th Avenue, New York, NY 10011.

73. From on or about December 01, 2016 to December 31, 2017, Plaintiff HAIJUN CAO's regular work schedule ran from 11:00 to 22:30 for eleven and a half (11.5) hours a day on Mondays and Thursdays for two (2) days a week; and from 17:00 to 22:30 for five and a half (5.5) hours a day on Teusdays, Wednesdays, and Sundays for three (3) days a week; and from 17:00 to 23:00 for six (6) hours a day on Fridays and Saturdays for two (2) days a week; for a total of fifty one and a half (51.5) hours per week.

74. In addition to his regular hours, Plaintiff HAIJUN CAO was required to work an extra half (0.5) hour for two or three days a week, which amount to an additional one and a quarter (1.25) hours per week.

75. As a result, Plaintiff HAIJUN CAO worked a total of fifty two and three quarters (52.75) (hours per week.

76. At all relevant times, Plaintiff HAIJUN CAO did not have a fixed time for lunch or for dinner.

77. Plaintiff HAIJUN CAO had ten (10) minutes to eat and even then, he was on call, meaning that if an order came in, his break stopped and he had to make deliveries.

78. From on or about December 01, 2016 to December 31, 2017, Plaintiff HAIJUN CAO was paid at a rate of six dollars and eighty cents ($6.80) per hour, and was only paid for forty (40) hours per week, despite he actually worked longer hours.

79. At all relevant times, Plaintiff HAIJUN CAO was not paid overtime pay for his overtime work.

80. Throughout his employment, Plaintiff HAIJUN CAO was not given a statement with his payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

81. Throughout his employment, Plaintiff HAIJUN CAO was not compensated at least at one-and-one-half his promised hourly wage or the minimum wage (whichever was greater) for all hours worked above forty (40) in each workweek.

82. Throughout his employment, Plaintiff HAIJUN CAO was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff QIFANG CHEN

83. From on or about August 01, 2018 to May 27, 2019 Plaintiff QIFANG CHEN was employed by Defendants to work as a waitress and cashier at 58 Third Avenue, New York, NY 10003.

84. From on or about August 01, 2018 to May 27, 2019, Plaintiff QIFANG CHEN's regular work schedule ran from 11:00 to 22:00 for eleven (11) hours a day on Sundays

through Thursdays for five (5) days a week; and from 11:00 to 23:00 for twelve (12) hours a day on Fridays through Saturdays for two (2) days a week; for a total of seventy nine (79) hours per week.

85. At all relevant times, Plaintiff QIFANG CHEN did not have a fixed time for lunch or for dinner.

86. Plaintiff QIFANG CHEN was on call every minute, she could only eat lunch or dinner when there are no customers, and if there are any customer present in the restaurant, she had to cover the tables.

87. From on or about August 01, 2018 to December 31, 2018, Plaintiff QIFANG CHEN was paid at a rate of eight dollars and sixty-five cents ($8.65) per hour.

88. From on or about August 01, 2018 to December 31, 2018, Plaintiff QIFANG CHEN was not paid at the rate at one and half times of her regular rate or the lawful minimum wage rate for the hours she worked over forty (40) in a given workweek.

89. From on or about August 01, 2018 to December 31, 2018, Plaintiff QIFANG CHEN was paid at a rate of eight dollars and sixty-five cents ($8.65) per hour for her hours worked over forty (40) in a given work week.

90. From on or about August 01, 2018 to December 31, 2018, Defendants deducted 3% from Plaintiff QIFANG CHEN's tips received through credit card transactions to cover the transaction cost.

91. From on or about January 01, 2019 to May 27, 2019, Plaintiff QIFANG CHEN worked as cashier and waitress interchangeably. She would act as cashier when another part-time waitress is scheduled to work, and would act as a waitress when another part-time cashier is scheduled to work.

92. From on or about January 01, 2019 to May 27, 2019, Plaintiff QIFANG CHEN was promised to be paid a flat monthly rate of $3500 per month.

93. Throughout her employment, Plaintiff QIFANG CHEN was not given a statement with her payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

94. Throughout her employment, Plaintiff QIFANG CHEN was not compensated at least at one-and-one-half his promised hourly wage or the minimum wage (whichever was greater) for all hours worked above forty (40) in each workweek.

95. Throughout her employment, Plaintiff QIFANG CHEN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

96. Before January 1, 2019, Plaintiff QIFANG CHEN was paid by TAI HUNG CHIU a/k/a DANIEL CHIU.

97. After January 1, 2019, Plaintiff QIFANG CHEN was paid by SHICHANG XIE a/k/a KENNY XIE.

98. Defendant SHU HAN JU RESTAURANT II CORP's checks to Plaintiff QIFANG CHEN bounced at least once during the period from January 1, 2019 to May 27, 2019.

99. As a result, Plaintiff QIFANG CHEN was not paid all wages promised to her for the period from January 1, 2019 to May 27, 2019.

100. In addition, Plaintiff QIFANG CHEN had to pay fees for the bounced checks.

101.    In addition to the failure to pay lawful minimum wage, overtime compensation, and other statutory compensation, Defendants owe Plaintiff QIFANG CHEN wages promised to her in the amount of twenty six thousand five hundred and twenty five dollars ($26,525).

### Plaintiff ZHOU LIAO

102.    From on or about March 3, 2019 to May 27, 2019, Plaintiff ZHOU LIAO was employed by Defendants to work as a deliveryman at 58 Third Avenue, New York, NY 10003.

103.    From on or about March 3, 2019 to May 27, 2019, Plaintiff ZHOU LIAO's regular work schedule ran from 11:00 to 23:00 for twelve (12) hours a day on Sundays through Thursdays, with Wednesday off, for four (4) days a week; and from 11:00 to 24:00 for thirteen (13) hours a day on Fridays through Saturdays for two (2) days a week; for a total of seventy four (74) hours per week.

104.    At all relevant times, Plaintiff ZHOU LIAO did not have a fixed time for lunch or for dinner.

105.    Plaintiff ZHOU LIAO was on call every minute, he could only eat lunch or dinner when there are no orders or no deliveries to make, and if there are any orders came in while he was eating, he had to stop eating and go make his delivery.

106.    From on or about March 3, 2019 to March 31, 2019, Plaintiff ZHOU LIAO was promised to be paid at $1500 per month.

107.    From on or about April 1, 2019 to April 30, 2019, Plaintiff ZHOU LIAO was promised to be paid at $1800 per month.

108.    From on or about May 1, 2019 to May 27, 2019, Plaintiff ZHOU LIAO was

promised to be paid at $2100 per month.

109.     From on or about March 3, 2019 to May 27, 2019, Plaintiff ZHOU LIAO was not paid at the rate at one and half times of his regular rate or the lawful minimum wage rate for the hours he worked over forty (40) in a given workweek.

110.     From on or about March 3, 2019 to May 27, 2019, Defendants deducted 3% from Plaintiff ZHOU LIAO's tips received through credit card transactions to cover the transaction cost.

111.     Plaintiff ZHOU LIAO was promised to be paid semi-monthly, however, his payments were rarely made on time.

112.     Throughout his employment, Plaintiff ZHOU LIAO was not given a statement with his payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

113.     Throughout his employment, Plaintiff ZHOU LIAO was not compensated at least at one-and-one-half his promised hourly wage or the minimum wage (whichever was greater) for all hours worked above forty (40) in each workweek.

114.     Throughout his employment, Plaintiff ZHOU LIAO was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

115.     Defendant SHU HAN JU RESTAURANT II CORP's checks to Plaintiff ZHOU LIAO bounced at least once during the period from March 3, 2019 to May 27,

2019.

116.        As a result, Plaintiff ZHOU LIAO was not paid all wages promised to him for

the period from March 3, 2019 to May 27, 2019.

117.        In addition, Plaintiff ZHOU LIAO had to pay fees to his bank for the bounced

checks.

118.        In addition to the failure to pay lawful minimum wage, overtime

compensation, and other statutory compensation, Defendants owe Plaintiff ZHOU

LIAO wages promised to him in the amount of two thousand four hundred and thirty

six dollars and seventy five cents ($2436.75).

### Plaintiff XIANGUI LIANG

119.        From on or about March 7, 2019 to May 27, 2019, Plaintiff XIANGUI LIANG

was employed by Defendants to work as a waiter at 58 Third Avenue, New York, NY

10003.

120.        From on or about March 7, 2019 to May 27, 2019, Plaintiff XIANGUI

LIANG's regular work schedule ran from 11:00 to 22:00 for eleven (11) hours a day

on Sundays through Thursdays, with Tuesdays off, for four (4) days a week; and from

11:00 to 23:00 for twelve (12) hours a day on Fridays through Saturdays for two (2)

days a week; for a total of sixty eight (68) hours per week.

121.        At all relevant times, Plaintiff XIANGUI LIANG did not have a fixed time for

lunch or for dinner.

122.        Plaintiff XIANGUI LIANG was on call every minute, he could only eat lunch

or dinner when there were no customers in the restaurant, and if there were customers,

he had to cover the tables.

123.     From on or about March 7, 2019 to May 27, Plaintiff XIANGUI LIANG was promised to be paid at $2000 per month.

124.     From on or about March 7, 2019 to May 27, 2019, Plaintiff XIANGUI LIANG was not paid at the rate at one and half times of his regular rate or the lawful minimum wage rate for the hours he worked over forty (40) in a given workweek.

125.     From on or about March 7, 2019 to May 27, 2019, Defendants deducted 3% from Plaintiff XIANGUI LIANG's tips received through credit card transactions to cover the transaction cost.

126.     Plaintiff XIANGUI LIANG was promised to be paid semi-monthly, however, his payments were rarely made on time.

127.     Throughout his employment, Plaintiff XIANGUI LIANG was not given a statement with his payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

128.     Throughout his employment, Plaintiff XIANGUI LIANG was not compensated at least at one-and-one-half his promised hourly wage or the minimum wage (whichever was greater) for all hours worked above forty (40) in each workweek.

129.     Throughout his employment, Plaintiff XIANGUI LIANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

130.     Plaintiff XIANGUI LIANG was not paid all wages promised to him for the period from March 7, 2019 to May 27, 2019.

131.     In addition to the failure to pay lawful minimum wage, overtime compensation, and other statutory compensation, Defendants owe Plaintiff XIANGUI LIANG wages promised to him in the amount of three thousand six hundred forty six dollars and eighty one cents ($3646.81).

***Plaintiff HONGYING TANG***

132.     From on or about April 26, 2019 to May 27, 2019, Plaintiff HONGYING TANG was employed by Defendants to work as an appetizer preparer at 58 Third Avenue, New York, NY 10003.

133.     From on or about April 26, 2019 to May 27, 2019, Plaintiff HONGYING TANG's regular work schedule ran from 11:30 to 22:00 for ten and a half (10.5) hours a day on Sundays through Thursdays, with Wednesdays off, for four (4) days a week; and from 11:30 to 23:30 for twelve (12) hours a day on Fridays through Saturdays for two (2) days a week; for a total of sixty six (66) hours per week.

134.     At all relevant times, Plaintiff HONGYING TANG did not have a fixed time for lunch or for dinner.

135.     Plaintiff HONGYING TANG was on call every minute, she could only eat lunch or dinner when there were no orders in the restaurant, and if an order came in, she had to stop eating and prepare dishes.

136.     From on or about April 26, 2019 to May 27, 2019, Plaintiff HONGYING TANG was promised to be paid at $3200 per month.

137.     From on or about April 26, 2019 to May 27, 2019, Plaintiff HONGYING

TANG was not paid at the rate at one and half times of her regular rate or the lawful minimum wage rate for the hours she worked over forty (40) in a given workweek.

138.     Plaintiff was promised to be paid semi-monthly, however, her payments were rarely made on time.

139.     Throughout her employment, Plaintiff HONGYING TANG was not given a statement with her payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

140.     Throughout her employment, Plaintiff HONGYING TANG was not compensated at least at one-and-one-half her promised hourly wage or the minimum wage (whichever was greater) for all hours worked above forty (40) in each workweek.

141.     Throughout her employment, Plaintiff HONGYING TANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

142.     Plaintiff HONGYING TANG was not paid all wages promised to her for the period from April 26, 2019 to May 27, 2019.

143.     In addition to the failure to pay lawful minimum wage, overtime compensation, and other statutory compensation, Defendants owe Plaintiff HONGYING TANG wages promised to her in the amount of one thousand one hundred and seventy four dollars ($1174).

## COLLECTIVE ACTION ALLEGATIONS

144.     Plaintiffs bring this action individually and on behalf of all other and current and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate or at the minimum wage for all hours worked, and at one and one half times their promised rate or minimum wage, whichever was greater, for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

145.     Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

146.     All said persons, including Plaintiffs, are referred to herein as the "Class."

147.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

148.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and

the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

***Commonality***

149.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Defendants failed to pay Plaintiffs and Class members for all hours worked;

c.    Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

d.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

g.    Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.    At what common rate, or rates subject to common method of calculation was

and is Defendants required to pay the Class members for their work.

*Typicality*

150.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

151.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

152.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts

and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

153.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

# STATEMENT OF CLAIMS

## COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage Brought on behalf of Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang, and the FLSA Collective]**

154.     Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.     From on or about January 1, 2019 to May 27, 2019, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang, and the similarly situated collective action members, for some or all of the hours they worked.

156.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

157.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
**[Violation of New York Labor Law—Failure to Pay Minimum Wage Brought on behalf of Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang, and Rule 23 Class]**

158.     Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159.     From on or about January 1, 2019 to May 27, 2019, Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

160.     From on or about January 1, 2019 to May 27, 2019, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs Qifang Chen, Zhou Liao, Xiangui Liang, and Hongying Tang, and the class members, for some or all of the hours they worked.

161.     Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay them minimum wages in the lawful amount for all hours worked.

162.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 et seq., §§650 et seq., and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.

**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of all Plaintiffs and the FLSA Collective]**

163.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

164.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

165.     The FLSA provides that any employer who violates the provisions of 29

U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid

overtime compensation, and in an additional equal amount as liquidated damages. 29

USC § 216(b).

166.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime

pay violated the FLSA.

167.     At all relevant times, Defendants had, and continue to have, a policy of

practice of refusing to pay overtime compensation at the statutory rate of time and a

half to Plaintiff and Collective Action Members for all hours worked in excess of forty

(40) hours per workweek, which violated and continues to violate the FLSA, 29

U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

168.     The FLSA and supporting regulations required employers to notify employees

of employment law requires employers to notify employment law requirements. 29

C.F.R. § 516.4.

169.     Defendants willfully failed to notify Plaintiffs and FLSA Collective of the

requirements of the employment laws in order to facilitate their exploitation of

Plaintiff' and FLSA Collectives' labor.

170.     Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by their failure to compensate Plaintiff and Collective Class Members the

statutory overtime rate of time and one half for all hours worked in excess of forty

(40) per week when they knew or should have known such was due and that failing to

do so would financially injure Plaintiff and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of all Plaintiffs and Rule 23 Class]

171.      Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

172.      An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

173.      At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

174.      Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

175.      Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of all Plaintiffs and Rule 23 Class]

176.      Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

177.      The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

178.      Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of all Plaintiffs and the Rule 23 Class]

179.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

180.     The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL § 162.

181.     Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.

182.     Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

183.     Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

### COUNT VII.
**[Violation of New York Labor Law—Failure to Keep Records
Brought on behalf of all Plaintiffs and Rule 23 Class]**

184.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

185.     Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

186.     As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages

including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

187.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

188.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of all Plaintiffs and Rule 23 Class]

189.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

190.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

191.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

192.     Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

193.     Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of all Plaintiffs and Rule 23 Class]

194.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

195.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

196.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

197.     Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid wages, and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and

liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.


Dated: Flushing, New York

June 25, 2019

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)